**FILED**

**MAY 14, 2010**

KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| JOE LUIS HERNANDEZ, PRO SE, | § | |
| TDCJ-CID #1214728 | § | |
| Previous Illinois DOC ID #R14340, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:07-CV-0086 |
| | § | |
| GREGORY A. GERZON, | § | |
| TITA P. JURADO, | § | |
| KRISTY L. THOMPSON, and | § | |
| VAL L. CARTER, | § | |
| | § | |
| Defendants. | § | |

### REPORT AND RECOMMENDATION TO GRANT, IN PART, AND TO DENY, IN PART, DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On this day came for consideration defendants' September 9, 2009 Motion for Summary

Judgment with supporting brief and attachments, and plaintiff's October 21, 2009 response with

supporting exhibits.  For the reasons set forth below, it is the recommendation of the Magistrate

Judge that defendants' motion for summary judgment be granted with respect to plaintiff's

claims for expungement of his disciplinary cases and for return of old classification, job, and

housing assignment; and that it be denied with respect to plaintiff's claim for punitive damages

based on retaliation.

### PLAINTIFF'S CLAIMS

Plaintiff claims on August 8, 2006, while an inmate at the Clements Unit of the Texas

Department of Criminal Justice, Institutional Division, he was performing an inventory when

defendant CARTER instructed him to "put the shelf tags up".  Plaintiff responded by telling

CARTER how he felt the job should be done and plaintiff alleges CARTER replied with vulgar and racist epithets and told plaintiff to put up the shelf tags.  Plaintiff eventually put up the shelf tags but told CARTER he would tell defendant GERZON.  When GERZON arrived, plaintiff complained of CARTER's actions and said he didn't want to work in the commissary anymore.  Plaintiff says defendant GERZON responded that they had to remember they were dealing with an idiot, which plaintiff took as meaning defendant CARTER, and that he (GERZON) would handle it.  The next day, plaintiff received three disciplinary cases.  One was from defendant CARTER for failing to obey his order to put shelf tags up; one, from defendant GERZON for threatening to inflict harm on defendant CARTER; and one, from defendant THOMPSON for threatening to inflict harm on defendant CARTER.  Plaintiff also alleges an inmate Montenegro overheard defendants GERZON, THOMPSON[1], and CARTER talking that morning about plaintiff and saying that it would be "the right thing to do by writing the Plaintiff a major case based on the theory, [sic] of "Threatening an Officer," before the Plaintiff could use his Grievance Rights against [defendant CARTER] to the Unit Grievance Coordinator[2]."  Plaintiff claims the disciplinary cases were written in retaliation for his having complained to defendant GERZON about defendant CARTER.

---

[1]The Courts notes plaintiff alleges GERZON, THOMPSON, and CARTER were overheard by inmate Montenegro, but, in his statement, Montenegro says he overheard GERZON, JURADO, and CARTER talking.  This inconsistency, if indeed it is one, has not been addressed by defendants.

[2]At page 3 of plaintiff's March 7, 2008 "Motion in Opposition to the Magistrate's Report and Recommendation."

Plaintiff requests an award of punitive damages, that the disciplinary cases be expunged from his record, and that he receive his old classification, job, and housing assignment which he had before the incident[3].

## UNDISPUTED FACTS

At all times relevant to the claims in this cause, plaintiff was an inmate in the custody of the Texas Department of Criminal Justice, Correctional Institutions Division. At all times relevant to this cause, defendants GERZON, JURADO, THOMPSON, and CARTER were employed by the Texas Department of Criminal Justice, Correctional Institutions Division. As a result of the incidents which occurred August 8, 2006, plaintiff was charged with and found guilty of disciplinary violations in the three cases as follows: (1) case no. 20060354348, resulting in a punishment of 45 days cell and commissary restrictions, 15 days in solitary confinement, and a class reduction from S3 to L1; (2) case no. 20060354351, resulting in punishment of 45 days recreation and commissary restriction, 15 days in solitary confinement and class reduction from L1 to L2; and (3) case no. 20060354354, resulting in punishment of 20 days recreation and commissary restriction. Although the disciplinary charges in these three cases were brought by some of the defendants, a hearing was conducted in each case and guilt determined by non-defendant third parties.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants present a portion of plaintiff's disciplinary records as summary judgment evidence and argue they are entitled to Eleventh Amendment immunity and Qualified Immunity.

---

[3]See plaintiff's original complaint and his July 26, 2007 response to question no. 7 of the Court's Questionnaire.

Plaintiff responds that he has not sued defendants in their official capacity, so they are

not entitled to Eleventh Amendment immunity.  Plaintiff also contests defendants' claim to

Qualified Immunity.

## THE STANDARD OF SUMMARY JUDGMENT REVIEW

Summary judgment may be granted where the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law.  Federal Rule of Civil Procedure 56(c).  Consequently, after adequate time for discovery

and upon motion, summary judgment should be entered against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case and on

which that party bears the burden of proof.  *Celotex v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct.

2548, 2552, 91 L.Ed.2d 265 (1986).

Because the consequences of summary judgment are so severe, the court must be careful

to avoid premature termination of legitimate lawsuits merely because of unskilled presentations.

*Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980).  In determining a movant's request for

summary judgment, all reasonable inferences must be made in favor of the party opposing the

motion.  *Phillip's Oil Co. v. OKC Corp.*, 812 F.2d 265, 272 (5th Cir.), *cert. denied*, 484 U.S. 851,

108 S.Ct. 152, 98 L.Ed.2d 107 (1987).  Only disputes of facts that could affect the outcome of

the suit at trial will properly preclude the entry of summary judgment.  *Anderson v. Liberty*

*Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

A complete failure of proof concerning an essential element of the nonmoving party's

case is fatal and entitles the moving party to judgment as a matter of law.  *Celotex v. Catrett*, 477

U.S. at 322-23, 106 S.Ct. at 2552.  The moving party bears the initial burden of demonstrating

the absence of a genuine issue of material fact.  Upon such a showing, the burden of production

shifts to the nonmovant to delineate specific facts which demonstrate the presence of a genuine

issue of material fact.  *Id.*; *Judwin Properties, Inc. v. U.S. Fire Ins. Co.*, 973 F.2d 432, 435 (5th

Cir. 1992).  A motion for judgment as a matter of law is properly granted when the facts and

inferences point so strongly in favor of the movant that a rational jury could not arrive at a

contrary verdict.  If there is substantial evidence, that is, evidence of such quality and weight that

reasonable and fair-minded jurors might reach a different conclusion, then the motion for

judgment as a matter of law should be denied.  *Waymire v. Harris County, Texas*, 86 F.3d 424,

427 (5th Cir. 1996).

### THE STANDARD OF SUMMARY JUDGMENT REVIEW
### UPON A PLEA OF QUALIFIED IMMUNITY

Since qualified immunity depends on whether the defendant violated a clearly established

constitutional right, a preliminary inquiry must be made whether the plaintiff has asserted a

violation of any constitutional right at all.  *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789,

1793, 114 L.Ed.2d 277 (1991).  Analysis at this stage is performed under the "currently

applicable constitutional standards."  *Rankin v. Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).

The second prong of the qualified immunity test is whether the constitutional right

alleged to have been violated was clearly established at the time of the incident; and, if so,

whether the conduct of the defendant was objectively unreasonable in  light of contemporaneous

clearly-established law.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998).  Although analysis

under the first prong requires the court to consider currently applicable constitutional standards,

analysis under the second prong requires a court to measure the objective reasonableness of an

official's conduct with reference to the law as it existed at the time of the conduct in question.

*Id*. (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound

discretion in light of the circumstances in the particular case at hand.  *Pearson v. Callahan*, ___

U.S. ____, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

### ANALYSIS OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

To claim retaliation, a prisoner must allege (1) a specific constitutional right, (2) the

defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a

retaliatory adverse act, and (4) causation.  *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir.

1998).  The inmate must be able to point to a specific constitutional right that has been violated.

*Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir.1999).  To state a claim, the inmate must allege

more than his personal belief that he is the victim of retaliation.  *Johnson v. Rodriguez*, 110 F.3d

299, 310 (5th Cir. 1997).  Conclusory allegations of retaliation are not sufficient; the plaintiff

must produce direct evidence of motivation or allege a chronology of events from which

retaliation may plausibly be inferred.  *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995).

Moreover, causation requires the plaintiff show that but for the retaliatory motive, the adverse

act would not have occurred.  *McDonald*, 132 F.3d at 231.  Finally, the retaliatory adverse act

must be more than inconsequential or *de minimis*, that is, it must be capable of deterring a person

of ordinary firmness from further exercising his constitutional rights.  *Morris v. Powell*, 449 F.3d

682 (5th Cir. 2006).

**Eleventh Amendment Immunity**

In his response to defendants' motion for summary judgment, plaintiff has stipulated he is not bringing any claims against the defendants in their official capacity.  Plaintiff did not specify the defendants' capacities in which he brought suit against them.  Therefore, to the extent plaintiff has sued the defendants in their official capacities, defendants motion for summary judgment is granted.

**Qualified Immunity**

Defendants argue the "informal grievance" plaintiff made to defendant GERZON when he complained of defendant CARTER's conduct is not constitutionally protected activity. Plaintiff responds it is part of the grievance process as every step1 grievance form requires the inmate to "try to resolve [his] problem with a staff member before [he] submit[s] a formal complaint."  The grievance form requires the inmate to list the name of the staff member with whom he **attempted informal resolution**, the date, the response he received, and the action taken.  Plaintiff argues this renders his verbal complaint to defendant GERZON part of the grievance process and brings it within the protection of the First Amendment.

The Fifth Circuit has stated the law was firmly established at least since 1990 that "a prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct."  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir.1995).  Consequently, whether part of the grievance process or not, plaintiff's verbal complaint to defendant GERZON about defendant CARTER was

constitutionally protected speech, or, at a minimum, is arguably constitutionally protected to the extent summary judgment cannot be granted on this basis.

Defendants next contend plaintiff has not produced direct evidence of their alleged retaliatory motivation nor demonstrated a sequence of events from which retaliation may plausibly be inferred," as required by *Woods v. Smith,* 60 F.3d 1161, 1166 (5th Cir.1995). Defendants point out plaintiff did not allege the facts contained in inmate Montenegro's unsworn affidavit when he filed his complaint or when he replied to the Court's questionnaire expressly inquiring about the basis for the claim of retaliatory intent. Instead, plaintiff did not produce Montenegro's affidavit until the Court issued a Report and Recommendation that his claim of retaliatory intent was speculative.

While plaintiff's tardiness in bringing forth inmate Montenegro's statement is an issue, the fact remains that plaintiff has adduced inmate Montenegro's unsworn affidavit statement [Exhibit B to plaintiff's response to defendants' motion for summary judgment]. In that statement, Montenegro states that, on August 8, 2006, he heard defendants GERZON, JURADO[4], and CARTER "discussing that it will be the right thing to do, by writing inmate Joe Luis Hernandez a Major case based on threatening an officer, before he filed his grievance against officer Val Carter . . .." The belated appearance of Montenegro's affidavit at the eleventh hour may be a factor leading some to question the credibility of the affiant and may be presented to the fact finder. Moreover, the facts alleged in the affidavit, if accepted as true,

---

[4]The Courts notes plaintiff alleges GERZON, THOMPSON, and CARTER were overheard by inmate Montenegro, but, in his statement, Montenegro says he overheard GERZON, JURADO, and CARTER talking. This inconsistency, if indeed it is one, has not been addressed by defendants.

could still be viewed by a factfinder as compatible with an absence of retaliatory intent.  In the

final analysis, however, the affidavit is sufficient to raise an issue of material fact on the element

of retaliatory intent.

Defendants next argue plaintiff has not shown a retaliatory adverse act because any

challenge to the conduct underlying the determinations of guilt on his three disciplinary cases is

barred by *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994).

"*Heck* holds that 'in order to recover damages for allegedly unconstitutional conviction or

imprisonment, **or for other harm caused by actions whose unlawfulness would render a**

**conviction or sentence invalid**, a § 1983 plaintiff must prove that the conviction or sentence has

been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal

authorized to make such determination, or called into question by a federal court's issuance of a

writ of habeas corpus [emphasis added].'" *Littles v. Board of Pardons and Paroles Div*., 68 F.3d

122, 123 (5th Cir. 1995)(citing *Heck,* 512 U.S. at 486, 114 S.Ct. at 2372).  In *Edwards v. Balisok*,

the Supreme Court approved the application of the *Heck* doctrine to the prison disciplinary

setting and held that a state prisoner's claim for damages in a challenge to the validity of the

procedures used to deprive him of good-time credits is not cognizable under section 1983.

*Edwards v. Balisok*, 520 U.S. 641, 117 S.Ct. 1584, 1589, 137 L.Ed.2d 906 (1997).

"A 'conviction,' for purposes of *Heck*, includes a ruling in a prison disciplinary

proceeding that results in a change to the prisoner's sentence, including the loss of good-time

credits."  *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998).  Although *Heck* addressed only a

claim for monetary relief, its holding has been extended to bar claims for declaratory and

injunctive relief.  *See, e.g., Walton v. Parish of LaSalle*, 258 Fed.App'x 633, 633-34 (5th Cir.

2007); *Collins v. Ainsworth*, 177 F3d. App'x 377, 379 (5th Cir. 2005); *Shaw v. Harris*, 116 Fed.

App'x 499, 500 (5th Cir. 2004).  Claims barred by *Heck* are legally frivolous.  *Hamilton v. Lyons*,

74 F.3d 99, 102 (5th Cir. 1996).

Plaintiff Hernandez received three cases, one for disobeying an order and two for

threatening an officer.  The parties' representations and the summary judgement evidence before

the Court reveals plaintiff lost no accumulated goodtime credits as a result of these cases.

Instead, he only suffered recreation and commissary restrictions, class reductions, and time in

solitary confinement, as well as collateral consequences such as his job and housing changes.

Plaintiff has requested these cases be expunged, that he receive his old classification, job, and

housing assignment which he had before the incident, and that he be awarded punitive damages.

Any award of expungement, and return of old classification, job, and housing assignment

would necessarily imply the invalidity of the disciplinary determinations.  Therefore, those

claims for relief are barred by *Heck*.  Regarding plaintiff's claim of retaliation, however, it is

possible he might attempt to prove one or more of the disciplinary cases, even if arguably

merited, would not have been written but for the defendants' retaliatory intent.

Consequently, to the extent plaintiff's claims are grounded in the alleged retaliatory

intent of the defendants and "threaten[ ] no consequence for his conviction or the duration of his

sentence," *Heck* presents no impediment.  *Muhammad v. Close*, 540 U.S. 749, 751-52, 124 S.Ct.

1303, 1304-1305, 158 L.Ed.2d 32 (2004).  "[F]avorable termination [of allegedly retaliatory

disciplinary proceedings] is not a requisite of a retaliatory interference claim."  *Woods v. Smith*,

60 F.3d 1161, 1164 (5th Cir. 1995); *Mahogany v. Rogers*, 293 Fed.App'x 259, 2008 WL 4111382

(5th Cir. (La.)).  While plaintiff could not receive the requested expungement of his cases or the

return of his old classification, job, and housing assignment, he can request punitive damages for

the receipt of one or more disciplinary cases which, absent retaliatory intent, would not have

been written against him.

Defendants also argue plaintiff has not shown causation, that is, that "but for" the

defendants' retaliatory motive, the disciplinary cases would not have been written, resulting in

his loss of classification, housing assignment, etc.  Defendants argue plaintiff's retaliation claim

does not survive the careful scrutiny required by *Woods v. Smith,* 60 F.3d 1161, 1166 (5th

Cir.1995).  The Court notes defendants have argued, at page 8, subsection a., of their brief in

support of their motion for summary judgment that, where the complained-of acts were the result

of both protected and unprotective activity, and would have occurred regardless of the exercise

of protected rights, the retaliation claim fails on the element of causation, citing *Johnson v.*

*Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997).  Defendants, however, have provided absolutely no

summary judgment evidence to support their contention that the disciplinary cases would have

been written in the absence of any retaliatory motive.

Lastly, defendants argue plaintiff's retaliation claims fail under the Prison Litigation

Reform Act because plaintiff cannot collect monetary relief for mental and emotional damages

absent a physical injury pursuant to Title 42, United States Code, section 1997e(e).

The Prison Litigation Reform Act requires a physical injury before a prisoner can recover

for psychological damages.  42 U.S.C. § 1997e(e) ("No federal civil action may be brought by a

prisoner ... for mental or emotional injury suffered while in custody without a prior showing of

physical injury.").  Plaintiff has not requested monetary damages for mental or emotional injury.

He has requested punitive damages[5].  Defendants have advanced no more argument concerning plaintiff's request for relief; therefore, the Court will not further address it herein.

### CONCLUSION

For the reasons set forth above, it is clear that, drawing all reasonable inferences in favor of the nonmoving party, plaintiff has shown there are material issues of disputed fact which preclude entry of summary judgment in the instant cause.  Federal Rule of Civil Procedure 56(c).

It is the opinion of the Magistrate Judge and RECOMMENDATION to the United States District Judge that defendants' motion for summary judgment be GRANTED WITH RESPECT TO PLAINTIFF'S CLAIMS FOR EXPUNGEMENT OF HIS DISCIPLINARY CASES AND FOR RETURN OF OLD CLASSIFICATION, JOB, AND HOUSING ASSIGNMENT; AND THAT IT BE DENIED WITH RESPECT TO PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES BASED ON RETALIATION.

### INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 14th day of May, 2010.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

---

[5] A prisoner may recover nominal and punitive damages for a Constitutional violation, despite section 1997e(e).  *Hutchins v. McDaniels*, 512 F.3d 193 (5th Cir. 2007).

07-0086.wpd                                                       12

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D).  When service is made by mail or electronic means, three (3) days are added after the prescribed period.  Fed. R. Civ. P. 6(e).  Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

07-0086.wpd